IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUCKY L. MEYER,                             No. C 03-05583 CW

       Plaintiff,                          ORDER GRANTING
                                            DEFENDANTS'
   v.                                       MOTION TO DISMISS
                                            AND GRANTING IN
DAVE GRAZIANI, et al.,                      PART PLAINTIFF'S
                                            REQUEST TO AMEND
       Defendants.

_____/

    Plaintiff Lucky Meyer brings suit for unlawful discrimination
and retaliation under the Rehabilitation Act, 29 U.S.C. § 701 et
seq. and the Americans With Disabilities Act, 42 U.S.C. § 12101 et
seq. (ADA) and for violation of constitutional rights under 42
U.S.C. § 1983.  Defendants move to dismiss Plaintiff's first
amended complaint (FAC) and, in the alternative, request a more
definite statement.  Plaintiff opposes this motion and, in the
alternative, requests leave to amend.  Plaintiff has also appealed
the magistrate judge's order denying her discovery requests in this
matter and has requested a stay in the disposition of this motion.
These matters have been submitted on the papers.  Having considered
all of the papers filed by the parties, the Court GRANTS
Defendants' motion to dismiss, GRANTS in part Plaintiff's request
for leave to amend, DENIES Plaintiff's request for stay and DENIES
Plaintiff's appeal of the denial of discovery.

United States District Court
For the Northern District of California

BACKGROUND

I.   Procedural History

Plaintiff was hired by Napa State Hospital (NSH) on July 1, 1999 as a psychiatric technician.  On October 10, 2002, Plaintiff was transferred to a warehouse run by NSH.  On April 15, 2003, she was placed on involuntary disability leave.  On May 15, 2003, Plaintiff was released to return to work by her doctor but was not reinstated.  On June 25, 2003, Plaintiff filed a claim with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based upon race, sex, age, and disability.  On August 29, 2003, the EEOC sent Plaintiff a letter entitled "Dismissal and Notice of Rights" (right-to-sue letter) indicating that the EEOC had been unable to substantiate the alleged discrimination and that Plaintiff had ninety days within which to file suit to preserve her claims.

On December 11, 2003, Plaintiff filed suit against NSH only, alleging employment discrimination based on her race and gender under Title VII of the Civil Rights Act of 1964.  On February 24, 2004, NSH moved to dismiss on statute of limitations grounds.  On April 20, 2004, Plaintiff submitted a request for leave to amend as of right which was granted by the Court on April 23, 2004.  On June 15, 2004, the Court denied NSH's first motion to dismiss on statute of limitations grounds.[1]  On October 20, 2004, Plaintiff filed her FAC, alleging claims under the Rehabilitation Act and the ADA, and

---

[1] As explained in that order, Plaintiff's complaint was received by the Clerk's office on November 25, 2003, within the ninety day statute of limitations period, but was not filed until December 11, 2003.

2

constitutional claims under 42 U.S.C. § 1983.  On June 10, 2005,
Defendants filed the motion to dismiss now before the Court.

II.  Factual History

Although, in her original complaint, Plaintiff alleged
violations of Title VII based on race and gender discrimination and
named NSH as the sole defendant, in the body of her complaint
Plaintiff also alleged discrimination by the "management staff" and
the "management program," as well as misconduct by unidentified
"E.D. personnel."  Comp. at 1-3.  Plaintiff submitted, with her
complaint, her claim filed with the California Department of Fair
Employment and Housing (DFEH) and a right-to-sue letter from the
DFEH.  In the DFEH claim, Plaintiff alleged that "personnel"
informed her that she would be terminated if she "did not go on
involuntary disability or disability retirement."

In her FAC, Plaintiff names eleven individuals as Defendants:
1) David Graziani, executive director of NSH, 2) Jeffrey Zwerin,
medical director of NSH, 3) Michael Stolp, program director of NSH
Program One, 4) Dean Percy, NSH personnel director, 5) Cheryl
Smith, a recreational therapist with NSH Program One, 6) Peggy
Spence, nursing coordinator of NSH Program One, 7) Eric Khoury, an
NSH staff psychiatrist, 8) Jatinder Singh, an NSH staff
psychologist, 9) Sandy Sanut, the unit supervisor for NSH ward T-8,
10) Elaine Moulton[2], an NSH human resources employee, and
11) Charles Schaffer, a contract psychiatrist employed by NSH

---

[2] Plaintiff named "Elaine Maulton" as a defendant.
Defendants' counsel indicates that the correct surname is
"Moulton."  The Court will refer to this Defendant as "Moulton."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(collectively, Individual Defendants).  Plaintiff sues each
Individual Defendant "individually in their official capacity."
FAC at 3:8-12.  Plaintiff specifically alleges that she is "unsure
of exactly what capacity to use to sue the defendants, considering
the facts as will be alleged." FAC at 3:5.  The Court liberally
construes Plaintiff's FAC to allege all claims against Individual
Defendants in both their official and individual capacities.[3]
Although Plaintiff does not name NSH in the caption of her FAC, she
alleges elsewhere in the FAC that she brings suit "against NSH."
Id.  Plaintiff neither refers to the right-to-sue letter nor
attaches the letter to the FAC.

In the FAC, as noted above, Plaintiff sues, not for race or
gender discrimination under Title VII, but for violations of the
Rehabilitation Act, the ADA, and her constitutional rights to free
speech, due process and equal protection, under 42 U.S.C. § 1983.[4]
The essence of the factual allegations of the FAC is that
Individual Defendants discriminated and retaliated against
Plaintiff because of her arthritis and her use of sick leave due to
her arthritis, and they retaliated against her because she
complained about NSH staff's abuse and neglect of patients and

---

[3] A suit against a State official in his or her "official
capacity" is a suit against the office itself and triggers
liability of the State.  Hafer v. Melo, 502 U.S. 21, 25-26 (1991).
A suit against a State official in his or her "individual capacity"
is a suit against the person and triggers direct liability on the
part of that individual.  Id.

[4] Because Plaintiff does not allege Title VII claims in the
FAC, they are no longer part of this case.

violations of NSH policies and procedures.[5]

Plaintiff alleges that adverse employment actions, such as her transfer to the NSH warehouse and her ultimate termination, were taken against her by her supervisors at NSH.  Plaintiff also alleges that she was subjected to a hostile work environment by NSH staff through a pattern of unfair discipline, repeated reassignment within the hospital, verbal harassment, humiliation and intimidation.

DISCUSSION

I.   Legal Standard

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e).  These rules "do not require a claimant to

_____

[5] Plaintiff alleges that she was terminated "because there is an unwritten . . . policy to harass and terminate anyone from employment, anyone who goes 'against the grain,' and complains about rule violations by other staff, or complains about the patients being abused or neglected."  FAC at 14:23-26.

set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading.  <u>Id.</u> at 296-97.  A <u>pro se</u> plaintiff's complaint will be liberally construed.  <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987).

II.  Section 1983 Claims

Defendants move to dismiss Plaintiff's section 1983 claims based on the statute of limitations and Eleventh Amendment immunity.

A.  Statute of Limitations

Plaintiff's original complaint, filed on December 11, 2003, contained no allegations of constitutional violations under 42 U.S.C. § 1983 and in the caption of the complaint, Plaintiff named

United States District Court

For the Northern District of California

NSH as the sole defendant in her suit.  In the FAC filed on October 20, 2004, Plaintiff alleges section 1983 claims against Individual Defendants based on violations of her constitutional rights to due process, equal protection and free speech.  As noted above, Plaintiff's claims were based on allegations of discrete adverse actions against her as well as of a hostile work environment.

The EEOC documents attached to Plaintiff's original complaint alleged adverse actions taken by NSH on or about August, 2002 through December, 2002.  The section 1983 claims against Individual Defendants were filed on October 20, 2004.  Assuming that the adverse actions described in the EEOC complaint are the basis for Plaintiff's section 1983 claims, Individual Defendants contend that the section 1983 claims were not filed within the applicable one-year statute of limitations.

     1.  The Applicable Statute of Limitations

Section 1983 claims are governed by California's statute of limitations for personal injury claims.  Wilson v. Garcia, 471 U.S. 261, 276 (1985) (forum State's statute of limitations for personal injury claims applies to section 1983 claims).  Until January 1, 2003, the applicable statute of limitations for section 1983 claims was one year under California Civil Procedure Code section 340(3).  McMillan v. Goleta Water Dist., 792 F.2d 1453, 1456 (9th Cir. 1986) (citing Wilson, 471 U.S. at 279 and Cal. Civ. P. Code § 340(3)).

Effective January 1, 2003, the California statute of limitations for assault, battery, and other personal injury claims was changed to two years.  Cal. Civ. Proc. Code § 335.1. Individual Defendants contend that the statute of limitations in

1 this case is governed by California Civil Procedure Code section

2 340(3), the statute of limitations which applied to personal

3 injuries before the enactment of section 335.1.  They are

4 incorrect.

5      Although a section 1983 action filed in California today

6 clearly would be governed by California's new two-year statute of

7 limitations for personal injury actions, this circuit and

8 California courts have held that the new statute of limitations

9 does not apply retroactively to expired claims.  Maldonado v.

10 Harris, 370 F.3d 945, 955 (9th Cir. 2004) (two-year statute of

11 limitations did not apply to claim which had expired several months

12 before enactment of section 335.1); Krupnick v. Duke Energy Morro

13 Bay, 115 Cal. App. 4th 1026, 1028 (2004) (two-year statute of

14 limitations did not apply retroactively to claims already barred).

15 However, a recent California appellate decision clarified that

16 claims which were not already barred by the original limitations

17 period at the time section 335.1 went into effect are governed by

18 the new statute.  Andonagui v. May Dept. Stores Co., 128 Cal. App.

19 4th 435, 441 (2005).  Because Plaintiff's claims were not time-

20 barred when section 335.1 went into effect on January 1, 2003, the

21 two-year statute of limitations governs this case.

22           2.  Acts Triggering of the Statute of Limitations

23      The statute of limitations on section 1983 claims begins to

24 run "when a plaintiff knows or has reason to know of the injury

25 which is the basis of the action."  Bagley v. CMC Real Estate

26 Corp., 923 F.2d 758, 760 (9th Cir. 1991).  When an injury occurs

27 for purposes of the statute of limitations depends on the nature of

28

1    the alleged injury.

2                a.   Discrete Retaliatory Acts

3        Discrete retaliatory acts begin the statutory clock the day

4    they happen.  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101,

5    110 (2002) (Title VII); <u>RK Ventures, Inc. v. City of Seattle</u>, 307

6    F.3d 1045, 1061 (9th Cir. 2002) (applying <u>Morgan</u> analysis to

7    section 1983 actions).  Although Plaintiff does not provide dates

8    in her FAC, according to her EEOC complaint, she was reassigned to

9    the NSH warehouse on December 10, 2002 and placed on involuntary

10   disability on April 15, 2003.  Thus, her October 20, 2004

11   complaint, which alleges that several Individual Defendants

12   "combined and arranged" these discrete retaliatory actions, is

13   timely.

14                b.   Hostile Work Environment

15       Plaintiff appears to allege that, in response to her exercise

16   of protected speech, Individual Defendants not only took discrete

17   actions against her but also created a hostile work environment.

18   <u>See</u> <u>Allen v. Scribner</u>, 812 F.2d 426, 434 n.17 (9th Cir. 1987)

19   ("entire campaign of harassment which though trivial in detail may

20   have been substantial in gross" sufficient to state a claim under

21   the First Amendment).  Plaintiff alleged retaliatory injury in the

22   form of the denial of assignments, perpetual reassignment within

23   the hospital, intimidation and unfair discipline.

24       With respect to "hostile work environment" claims:

25       It does not matter . . . that some of the component acts
         of the hostile work environment fall outside the
26       statutory time period.  Provided that an act contributing
         to the claim occurs within the filing period, the entire
27       time period of the hostile environment may be considered

28
                                      9

**United States District Court**
For the Northern District of California

by a court for the purposes of determining liability.
Morgan, 536 U.S. at 117.  Hostile work environment claims do not
begin at any discrete point in time because "[t]heir very nature
involves repeated conduct."  Id. at 115.  Because Plaintiff filed
the FAC on October 20, 2004 and because the applicable statute of
limitations is two years, if any act contributing to the hostile
work environment claim occurred on or after October 20, 2002, the
claim is timely.

Even if Plaintiff's claim were barred by the statute of
limitations, equitable tolling might apply.  As with the statute of
limitations, this Court must apply the rules for equitable tolling
from the forum State, California.  Hardin v. Straub, 490 U.S. 536,
539, 544 (1989); Cervantes v. City of San Diego, 5 F.3d 1273, 1275
(9th Cir. 1993).  Under California law, equitable tolling
"reliev[es] a plaintiff from the bar of a limitations statute when,
possessing several legal remedies he, reasonably and in good faith,
pursues one designed to lessen the extent of his injuries or
damage."  Addison v. California, 21 Cal. 3d 313, 317 (1978).
Equitable tolling is not appropriately resolved on a motion to
dismiss unless it is absolutely plain from the face of the
complaint that the plaintiff could prove no set of facts that could
entitle him or her to the benefit of that doctrine.  Cervantes, 5
F.3d at 1276.

As evidenced by her EEOC documentation, Plaintiff has spent
time pursuing administrative remedies with the EEOC.  Although she
was pursuing remedies for discrimination based on disability, as
long as two claims are predicated upon the same wrong, plaintiffs

10

**United States District Court**
For the Northern District of California

will be entitled to equitable tolling for time spent pursuing each

claim, if they satisfy California's three-pronged equitable tolling

test.  Lucchesi v. Bar-O Boys Ranch 353 F.3d 691, 696 (9th Cir.

2003).  Plaintiff's pursuit of administrative relief for her

disability discrimination claim may equitably toll her section 1983

claim.  Therefore, it is not clear from the face of the pleadings

that Plaintiff is not entitled to the benefit of equitable tolling.

If, in the future, Defendants wish to move for summary judgment on

statute of limitations grounds, they must address the issue of

equitable tolling.

  B. Properly Named Defendants

   1. NSH Is Not a Person under Section 1983

  NSH is an agency of the State of California and thus cannot be

named as a defendant in a section 1983 suit.  Section 1983 provides

that "[e]very person who, under color of any statute . . .

subjects, or causes to be subjected, any citizen of the United

States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to

the party injured in an action at law."  The Supreme Court has

found that a State is not a "person" within the meaning of section

1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71

(1989).  Agencies such as NSH, which are run by the State, are

likewise not "persons" within the meaning of section 1983.  Taylor

v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Any section 1983

claim against NSH is therefore dismissed with prejudice.

2.    Individual Defendants Cannot Be Sued in Their
Official Capacities for Damages under Section 1983.

Because suits for damages against individuals in their official capacity are impermissible under section 1983, Plaintiff's section 1983 damages claims against Individual Defendants in their official capacities must be dismissed.  Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  Suits against State officials in their official capacity therefore should be treated as suits against the State. Id.  Section 1983 does not allow suits against individual State employees in their official capacity.  Will, 491 U.S. at 71. Therefore, Plaintiff's § 1983 damages claims against Individual Defendants in their official capacity are hereby dismissed with prejudice.  However, Plaintiff's section 1983 official capacity claim for injunctive relief may proceed against Graziani under the Ex parte Young doctrine.  Hale v. Arizona 993 F.2d 1387, 1399 (9th Cir. 1993) (Section 1983 claim for injunctive relief may proceed against State official in his official capacity).  Because Graziani is the only party necessary to provide injunctive relief, the § 1983 claims for injunctive relief against the remaining Individual Defendants are dismissed with prejudice.

Section 1983 allows suits against State officials in their "individual capacities" as "persons" within the meaning of the statute.  Hafer, 502 U.S. at 31.  Section 1983 claims can be made against Individual Defendants in their individual capacities.

12

1    C.   Plaintiff Must Amend to State a Claim Under Section 1983

2         1. Legal Standard

3         Section 1983 "provides a cause of action for the 'deprivation

4    of any rights, privileges, or immunities secured by the

5    Constitution and laws' of the United States." Wilder v. Virginia

6    Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

7    Section 1983 is not itself a source of substantive rights, but

8    merely provides a method for vindicating federal rights elsewhere

9    conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989). To

10   state a claim under section 1983, a plaintiff must allege two

11   essential elements: (1) that a right secured by the Constitution or

12   laws of the United States was violated and (2) that the alleged

13   violation was committed by a person acting under the color of State

14   law. West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda

15   County, 811 F.2d 1243, 1245 (9th Cir. 1987).

16        Liability may be imposed on an individual defendant under

17   section 1983 if the plaintiff can show that the defendant

18   proximately caused the deprivation of a federally protected right.

19   Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City

20   of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981). A person

21   deprives another of a constitutional right within the meaning of

22   section 1983 if he or she does an affirmative act, participates in

23   another's affirmative act or omits to perform an act which he or

24   she is legally required to do, that causes the deprivation of which

25   the plaintiff complains. Leer, 844 F.2d at 633; Robins v. Meecham,

26   60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to

27   intervene to prevent Eighth Amendment violation may be basis for

28

13

liability).   To be held liable for failure to intervene, individuals must have had a "realistic opportunity" to intercede to prevent the constitutional injury.  Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (police officer without realistic opportunity to prevent excessive force by fellow officer not liable).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  Leer, 844 F.2d at 633.  To demonstrate causation in a retaliation claim based upon the exercise of free speech, a plaintiff must show "that his constitutionally protected expression was a substantial or motivating factor in the employer's adverse decision or conduct."  Allen, 812 F.2d at 433.  A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.  Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant State actor acted at least in part because of the plaintiff's membership in a protected class.  Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003).  The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property" without due process of law.  Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Mullins v. Oregon, 57 F.3d 789, 795 (9th Cir. 1995).  Procedural

United States District Court

For the Northern District of California

due process analysis involves two steps.  First, a plaintiff must show that the government has deprived him or her of life, liberty or property.  Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976). Second, the plaintiff must show that the government deprived him or her of these constitutionally-protected interests without due process of law.  Id.

2.   Alleged Acts and Omissions of Individual Defendants

Plaintiff alleges that Khoury, Stolp, Smith, Spence, Singh, Sanut and Moulton subjected her to retaliation.  Alone, these conclusory allegations are insufficient to withstand a motion to dismiss.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Although Plaintiff provides specific allegations with respect to each named defendant regarding his or her participation in depriving Plaintiff of her constitutional rights, she fails to state a claim against any Individual Defendant.

Plaintiff alleges that Khoury was a staff psychiatrist at NSH who, on more than one occasion, yelled at Plaintiff in front of patients and fellow NSH employees.  Khoury allegedly "combined and arranged" Plaintiff's continual transfer within NSH wards and her ultimate transfer to the NSH warehouse, both of which were considered a demotion.  FAC at 6:8.  Plaintiff alleges that Khoury's conduct occurred after Plaintiff complained about Khoury's violations of NSH health and safety rules.  Plaintiff does not allege that Khoury knew of Plaintiff's complaints nor does she allege that Khoury took any adverse action against her because of her membership in a protected class or without due process of law.

Plaintiff alleges that Stolp, who is responsible for

15

overseeing the activities of all Program One employees, improperly "combined and arranged" Plaintiff's continual transfer within NSH wards and her ultimate transfer to the NSH warehouse.  FAC at 6:27. Plaintiff alleges that this conduct occurred after Plaintiff complained about Khoury's violations of NSH health and safety rules, but does not allege that Stolp knew about her complaints or took any act against Plaintiff with the intent to discriminate against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Percy was the NSH personnel officer and personally handled her case.  She alleges that Percy "combined and arranged" Plaintiff's continual transfer within NSH wards and her ultimate transfer to the NSH warehouse and was one of two individuals who informed her that she must take involuntary disability or be terminated.  FAC at 7:27.  Plaintiff further alleges a verbal confrontation between Percy and herself in which he snapped at her, stating, "I'm tired of you and I'm tired of it all," and forcefully directed Plaintiff to "get out."  She alleges that he was present during a discussion between Moulton, Spence and NSH police regarding Plaintiff's unfitness for duty.  FAC at 7:16-23.  However, she does not allege that Percy knew about her complaints or that he took any adverse action against Plaintiff on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Smith untruthfully reported to Spence that Plaintiff assaulted her.  Plaintiff also alleges an incident of intimidation in which Smith stood very close to her, followed

United States District Court

For the Northern District of California

her, and ignored Plaintiff's request that Smith move further away. Again, however, Plaintiff does not allege that Smith knew about her complaints or that Smith took any adverse action against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Spence "combined and arranged" Plaintiff's continual transfer within NSH wards and her ultimate transfer to the NSH warehouse. FAC at 8:23. Plaintiff particularly alleges an intimidating verbal altercation between Spence and Plaintiff in which Spence accused Plaintiff of manipulating her shifts at the hospital and which concluded with Spence stating that, "if I find out you are causing problems, you will find out that I will do something about it!" FAC at 9:3-4. Plaintiff fails to allege that Spence knew about her complaints or that Spence took any adverse action against her on the basis of her membership in a protected class or due process of law.

Plaintiff alleges that Singh "combined and arranged" Plaintiff's continual transfer within NSH wards and her ultimate transfer to the NSH warehouse. FAC at 10:4. Plaintiff further alleges that Singh untruthfully accused Plaintiff of misconduct and of having an affair with a client. Plaintiff also alleges that Singh "supported" Khoury's actions against Plaintiff. FAC at 10:13. However, Plaintiff does not allege that Singh knew about her complaints or that Singh took any adverse action against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Sanut "combined . . and arranged" her

17

United States District Court

For the Northern District of California

continual transfer within NSH wards and her ultimate transfer to the NSH warehouse.  FAC at 10:17.  She also alleges that Sanut yelled and cursed at her in front of a patient and then spoke with one of her supervisors and untruthfully accused her of cursing that patient.  However, she does not allege that Sanut knew about her complaints or that Sanut took any adverse action against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Moulton, who worked in the Office of Human Resources at NSH, "combined and arranged" Plaintiff's continual transfer within NSH wards and her ultimate transfer to the NSH warehouse.  FAC at 10:17.  Plaintiff alleges that Moulton was one of two individuals who instructed Plaintiff that she must take involuntary disability or be terminated.  Plaintiff also alleges that Moulton discussed with Spence and NSH police Plaintiff's unfitness for duty and dangerousness and threatened to have Plaintiff arrested if she returned to NSH facilities.  However, Plaintiff does not allege that Moulton knew about her complaints or that Moulton took any adverse action against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Schaffer, a contract psychiatrist, falsely diagnosed Plaintiff as too dangerous to continue working at NSH "in order to circumvent . . . the unlawful and unethical actions of NSH."  FAC at 11:21-22.  Plaintiff alleges that by providing this false diagnosis and later withholding the report from Plaintiff, Schaffer was "doing the bidding" of NSH.  FAC at

United States District Court

For the Northern District of California

12:11-12.  However, Plaintiff does not allege that Schaffer knew about her complaints or that Schaffer took any adverse action against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Graziani, as executive director of NSH, is legally and ultimately responsible for the creation, implementation, monitoring, review, and enforcement of all rules and regulations governing NSH employees.  Plaintiff further alleges that Graziani had "personal knowledge of [Plaintiff's] case" and failed to perform an adequate investigation of the misconduct of his employees.  FAC at 5:6-10.  However, Plaintiff fails to allege that Graziani knew about her complaints or that he took any adverse action against her on the basis of her membership in a protected class or without due process of law.

Plaintiff alleges that Zwerin, as medical director of NSH, is legally responsible for the supervision of the psychiatrists and medical doctors at NSH.  Plaintiff further alleges that Zwerin had "personal knowledge of [Plaintiff's] case" and failed to perform an adequate investigation of the misconduct of staff psychiatrists alleged elsewhere in the complaint.  FAC at 5:16-18.  However, Plaintiff fails to allege that Zwerin knew about her complaints or that Zwerin took any adverse action against her on the basis of her membership in a protected class or without due process of law.

In sum, the FAC details individual events including verbal threats, physical intimidation, false accusations, unjust discipline, perpetual reassignments, false diagnosis and Plaintiff's ultimate termination performed by Khoury, Stolp, Percy,

19

United States District Court

For the Northern District of California

Smith, Spence, Singh, Sanut, Moulton, and Schaffer individually or in combination.  <u>Leer</u>, 844 F.2d at 633.  These cognizable injuries could support a First Amendment retaliation claim if they were caused by Plaintiff's exercise of free speech rights.  <u>Allen</u>, 812 F.2d at 433.  The alleged actions could support an Equal Protection claim if they were motivated by each Defendant's intent to discriminate against Plaintiff on the basis of her membership in a protected class.  The alleged actions could support a due process claim if they deprived Plaintiff of a protected property interest without due process of law.

However, Plaintiff has failed to allege facts from which could be drawn the inference of individualized causation necessary to state a section 1983 claim.  In order for Plaintiff's injuries to implicate the First Amendment, each Individual Defendant must have acted out of a desire to retaliate against Plaintiff for speaking on an issue of public concern, i.e. the abuse of patients at NSH.  However, the FAC fails to indicate to whom Plaintiff addressed any of her complaints about the abuse of patients at NSH, or when.  Nor does the FAC allege that any Individual Defendant knew or could be reasonably expected to have known about Plaintiff's complaints concerning the abuse of patients or that any Individual Defendant committed any of the individual actions listed in the FAC because of such knowledge.

Therefore, Plaintiff's section 1983 claims against the Individual Defendants based on First Amendment violations are dismissed with leave to amend.  If Plaintiff can amend her complaint to assert truthfully facts from which it could be

inferred that Khoury, Stolp, Percy, Smith, Spence, Singh, Sanut, Moulton, and Schaffer 1) knew of her complaints about the abuse of patients at NSH and 2) thereafter took individual retaliatory actions because of this knowledge, she may state a First Amendment claim for damages under section 1983 against these Individual Defendants.

Furthermore, Plaintiff fails to allege any facts that would raise an inference of discriminatory intent on the part of any Individual Defendant. Therefore, Plaintiff's section 1983 claims against the Individual Defendants based on Equal Protection violations are dismissed with leave to amend for Plaintiff to add such allegations, if she truthfully can do so.

Plaintiff also alleges inadequate investigation by Graziani and Zwerin of the workplace abuses committed by the aforementioned Individual Defendants. Graziani and Zwerin are allegedly responsible for monitoring the behavior of NSH employees. As noted above, failure to intervene to prevent a constitutional injury can support a section 1983 claim. Leer, 844 F.2d at 633. However, in order to be held liable for a failure to intervene, an individual must have had a "realistic opportunity" to prevent the constitutional injury. Cunningham, 229 F.3d at 1289. Graziani and Zwerin could not have had such an opportunity unless they knew of Plaintiff's constitutional injuries while they were ongoing, a fact which Plaintiff has not alleged. If Plaintiff can amend her complaint to assert truthfully that Graziani and Zwerin knew 1) that Plaintiff engaged in protected speech, 2) that adverse employment actions were taken against her because of her protected

speech, or 3) that adverse employment actions were taken against her because of her membership in a protected class, she may state a First Amendment or Equal Protection claim against Graziani and Zwerin under section 1983.

In regard to Plaintiff's due process claim, she may have a property interest in continued employment. See Skelly v. State Personnel Bd., 15 Cal. 3d 194, 206-07 (1975) (California's statutory scheme regulating civil service employment creates property interest if employee has achieved permanent employee status). If Plaintiff has such a property interest, she may not be dismissed or subjected to other disciplinary measures without a hearing. Id. at 207. Plaintiff must allege that she has such a property interest and specify which Defendant or Defendants terminated her employment or subjected her to disciplinary measures without providing for a hearing prior to taking such actions. Therefore, Plaintiff's due process claim is dismissed with leave to amend for Plaintiff to add allegations that would remedy these deficiencies, if she truthfully can do so.

D.   Summary of Section 1983 Claims

Any section 1983 claim against NSH, the damages claims against Individual Defendants in their official capacities, and all section 1983 injunctive relief claims against Individual Defendants in their official capacities, except those against Graziani, are dismissed without leave to amend. The section 1983 damages claims against Individual Defendants in their individual capacities and the official capacity claim for injunctive relief against Graziani are dismissed with leave to amend.

22

III. ADA Claim

     A. Nature of the ADA Claim

     The essence of Plaintiff's ADA claim is that Individual Defendants discriminated and retaliated against her because she had arthritis and took sick leave due to arthritis.

     Title I of the ADA prohibits a "covered entity" from discriminating against a "qualified individual with a disability" on the basis of that individual's disability.  42 U.S.C. § 12112(a).  As defined by section 12112(b)(5)(B), discrimination includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant."

     Although Plaintiff need not support each element of her Title I discrimination claim at this stage in the case, Swierkiewicz, 534 U.S. at 508, the elements of such a claim are as follows.  To establish that her termination constituted discrimination under Title I, a plaintiff must prove that (1) she is disabled; (2) she is qualified to perform the essential functions of the job, either with or without accommodation; and (3) she was terminated because of her disability.  Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1095-96 (9th Cir. 2001).[6]

     Title V prohibits retaliation against individuals seeking to

_____

     [6] The Court does not decide whether Plaintiff's arthritis is a qualifying disability within the meaning of the ADA; the determination of this issue is inappropriate at this stage in the proceedings.  Swierkiewicz, 534 U.S. at 508.

1   enforce the statutory provisions of the ADA.   42 U.S.C. § 12203(a).

2   To succeed in a retaliation claim a plaintiff must show

3   "(1) involvement in an activity protected under the ADA, (2) an

4   adverse employment action and (3) a causal link between the two."

5   <u>Coons v. Sec'y of United States Dept. of Treasury</u>, 383 F.3d 879,

6   887 (9th Cir. 2004).

7        B.   Exhaustion of Administrative Remedies

8        Defendants argue that any ADA claims are barred because

9   Plaintiff has failed to plead exhaustion of remedies or to attach

10  to the FAC any evidence of exhaustion.   To bring a claim under

11  Title I of the ADA, a plaintiff must exhaust administrative

12  remedies by filing a formal complaint with the EEOC and filing suit

13  within ninety days of receipt of a right-to-sue letter.   <u>Santa</u>

14  <u>Maria v. Pac. Bell</u>, 202 F.3d 1170, 1176 (9th Cir. 2000).

15       Defendants rely upon the Ninth Circuit's statement that

16  "substantial compliance with the presentment of discrimination

17  complaints to an appropriate administrative agency is a

18  jurisdictional prerequisite."   <u>Sommatino v. United States</u>, 255 F.3d

19  704, 708 (9th Cir. 2001) (emphasis omitted).   The jurisdictional

20  prerequisite to which the <u>Sommatino</u> court refers, however, is not

21  the pleading of exhaustion of administrative remedies in the

22  complaint but the filing of a formal EEOC complaint.   <u>See</u> <u>id.</u> ("In

23  cases where a plaintiff has never presented a discrimination

24  complaint to the appropriate administrative authority, we have held

25  that the district court does not have subject matter

26  jurisdiction.")

27       Here, Plaintiff's formal EEOC complaint and right-to-sue

28

24

*United States District Court*
For the Northern District of California

letter, referring to discrimination based on disability, were
attached to her original complaint.  Therefore, it appears that
Plaintiff has complied with the exhaustion requirements necessary
to secure the jurisdiction of this Court with regard to her
disability discrimination claims.  Plaintiff is directed to attach
her EEOC documentation to her second amended complaint.

However, Plaintiff has not exhausted her ADA retaliation
claims.  Exhaustion extends only to claims that fall "within the
scope of the EEOC's actual investigation or an EEOC investigation
that could reasonably be expected to grow out of the charge."
B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002).
When the legal theory of unlawful retaliation and the operative
facts regarding a retaliation claim are not related to the facts in
the EEOC charge, a plaintiff has not exhausted a retaliation claim.
Vasquez v. County of Los Angeles, 349 F.3d 634, 645 (9th Cir.
2003).  The box on Plaintiff's EEOC complaint referring to
retaliation was not checked and the EEOC complaint does not refer
to Plaintiff engaging in a protected activity as required for a
retaliation claim.  Retaliation is beyond the scope of reasonable
EEOC investigation of Plaintiff's claims, so Plaintiff has not
exhausted her ADA retaliation claim.  Because exhaustion of
remedies is a jurisdictional requirement, Sommatino, 255 F.3d at
708, this claim is therefore dismissed.

The Court also notes that Plaintiff failed to name Individual
Defendants in her EEOC complaint.  Charges of discrimination can be
brought against persons not named in an EEOC complaint "as long as
they were involved in the acts giving rise to the E.E.O.C. claims."

25

United States District Court

For the Northern District of California

EEOC v. National Educ. Ass'n, Alaska, 422 F.3d 840, 847 (9th Cir. 2005).  Plaintiff's EEOC complaint does not specify the acts of harassment by Individual Defendants upon which she now bases her claims against them.  However, because, as discussed below, Plaintiff cannot bring ADA claims against individuals, the Court need not address whether Plaintiff's EEOC complaint exhausted the claims against Individual Defendants.[7]

C.   Claims Against the Individual Defendants

Individual Defendants move to dismiss Plaintiff's ADA claim on the ground that individuals cannot be sued under the ADA.

1.   Discrimination Claims under Title I Against Individual Defendants as Individuals

Title I of the ADA prohibits employment discrimination against a "qualified individual with a disability" by a "covered entity" such as an "employer." 42 U.S.C. §§ 12111(2), 12112(a).  The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person . . . " 42 U.S.C. § 12111(5)(A).  This definition mirrors the definitions of employer in Title VII, 42 U.S.C. § 2000e(b), and in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 630.  The Ninth Circuit has repeatedly noted that

---

[7] Defendants contend for the first time in their reply brief, without providing supporting argument, that the statute of limitations has expired for Plaintiff's ADA and Rehabilitation Act claims.  However, like section 1983 claims, claims under the ADA and the Rehabilitation Act are typically governed by State statutes of limitations for personal injury.  See Baker v. Board of Regents of State of Kan., 991 F.2d 628, 632 (10th Cir. 1993) (analogizing Rehabilitation Act claims to personal injury claims).  To the extent that the statute of limitations is relevant to the ADA and Rehabilitation Act claims, the statute of limitations analysis applicable to Plaintiff's section 1983 claims applies here.

analogy to Title VII helps to define the scope of parallel provisions of the ADA.  <u>Hernandez v. Hughes Missile Sys. Co.</u>, 362 F.3d 564, 568 (9th Cir. 2004) (drawing on Title VII precedent to set out plaintiff's burden in ADA case); <u>Snead</u>, 237 F.3d at 1093 (holding that Title VII analysis applies in ADA case); <u>Head v. Glacier Northwest Inc.</u>, 413 F.3d 1053, 1064-65 (9th Cir. 2005) (holding Title VII causation standard is applicable under the ADA). Individual employees cannot be held personally liable for damages under Title VII or the ADEA.  <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587-88 (9th Cir. 1993).

The Ninth Circuit has not decided the issue of individual liability under the ADA.  <u>Eason v. Clark County Sch. Dist.</u>, 303 F.3d 1137, 1145 (9th Cir. 2002).  However, other circuits, and district courts in the Ninth Circuit, have held, by analogy to Title VII and the ADEA, that individuals do not qualify as "employers" under Title I of the ADA and are not subject to personal liability for acts of disability discrimination.  <u>See</u>, <u>e.g.</u>, <u>Mason v. Stallings</u>, 82 F.3d 1007, 1009 (11th Cir. 1996); <u>EEOC v. AIC Sec. Investigations, Ltd.</u>, 55 F.3d 1276, 1282 (7th Cir. 1995); <u>Stern v. California State Archives</u>, 982 F. Supp. 690, 692 (E.D. Cal. 1997); <u>Gallo v. Bd. of Regents of the Univ. of California</u>, 916 F. Supp. 1005, 1009 (S.D. Cal. 1995).  The Court finds the reasoning of these courts persuasive and holds that individuals may not be held personally liable under Title I of the ADA for acts of disability discrimination.  Therefore, Plaintiff's Title I claims against Individual Defendants in their individual capacities are dismissed.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.   Discrimination Claims under Title I Against
     Individual Defendants in Their Official Capacities

Plaintiff also brings suit under the ADA against Individual
Defendants in their official capacities, both for money damages and
for injunctive relief.

a.   Monetary Damages

Claims for damages against Individual Defendants in their
official capacities, which would require payment by the State
treasury, implicate the State's sovereign immunity under the
Eleventh Amendment.  The Eleventh Amendment bars from the federal
courts suits for damages against a State by its own citizens,
citizens of another State or citizens or subjects of any foreign
State.  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240 n.2
(1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978); Edelman v.
Jordan, 415 U.S. 651, 676-77 (1974).  Unless a State has waived its
Eleventh Amendment immunity or Congress has overridden it, a State
cannot be sued for monetary damages.  See Kentucky v. Graham, 473
U.S. 159, 167 n.14 (1985) (citing Pugh, 438 U.S. at 781;
Confederated Tribes & Bands v. Locke, 176 F.3d 467, 469 (9th Cir.
1999).

In Board of Trustees of the University of Alabama v. Garrett,
the Supreme Court held that in Title I of the ADA Congress did not
validly abrogate the States' Eleventh Amendment immunity.  531 U.S.
356, 360 (1999).  After Garrett, it is clear that States are immune
from suits for money damages under Title I of the ADA.  Douglas v.
California Dept. of Youth Auth., 271 F.3d 812, 821 (9th Cir. 2001).
Therefore, Plaintiff's claims against Individual Defendants in

28

their official capacities for compensatory and punitive damages are dismissed with prejudice.  Any ADA claim for monetary damages against NSH is also barred by the Eleventh Amendment.  Therefore, all of Plaintiff's damages claims under the ADA are dismissed.

b.  Injunctive Relief

i.  Reinstatement

Plaintiff requests that this Court "require the defendants to take such actions as will ensure [that] lawful and fair conditions of employment are afforded to me . . . ."  FAC at 16:30-17:1.  The Court construes this prayer as a request for the prospective injunctive relief of reinstatement.

Under the Ex parte Young doctrine, a suit for prospective injunctive relief provides a narrow exception to Eleventh Amendment immunity.  See Ex parte Young, 209 U.S. 123, 159-60 (1908); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997). In Garrett, the Court explicitly stated that suits for injunctive relief under Title I can be brought against individuals in their official capacities under the Ex parte Young doctrine.  531 U.S. at 374 n.9.  Therefore, Plaintiff can properly bring a claim under the ADA to recover her position at NSH.  However, this claim need not be addressed to each Individual Defendant, but only to the official responsible for hiring employees at NSH.  Because Plaintiff alleges that Graziani, in his capacity as executive director of NSH, is ultimately responsible for all employment decisions at NSH, Graziani is the only defendant necessary to secure injunctive relief.  The injunctive relief claims against other Individual Defendants are dismissed without leave to amend.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1          ii.  Fair Conditions for Fellow Employees

2       Plaintiff also requests that the Court "require the defendants

3  to take such actions as will ensure [that] lawful and fair

4  conditions of employment are afforded to . . . employees of Napa

5  State Hospital."  FAC at 16:30-17:2.  Except to the extent that

6  this request embodies Plaintiff's request for her own

7  reinstatement, Plaintiff lacks standing to bring such a claim.

8       "[T]hose who seek to invoke the jurisdiction of the federal

9  courts must satisfy the threshold requirement imposed by Article

10  III of the Constitution by alleging an actual case or controversy."

11  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  In order to

12  establish the existence of such a case or controversy, a plaintiff

13  must demonstrate standing: that he or she has suffered an injury in

14  fact, that the injury was caused by the defendant's conduct, and

15  that the injury is capable of being redressed by a favorable court

16  ruling.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

17  (1992) (reciting the requirements for standing).  When a plaintiff

18  requests injunctive relief, this constitutional mandate requires

19  that the plaintiff face a threat of present or future harm.  Lyons,

20  461 U.S. at 101-03.  Because Defendants' treatment of other NSH

21  employees does not injure Plaintiff, Plaintiff lacks standing to

22  bring this claim and it must be dismissed.

23       D.  Plaintiff Must Amend Her Complaint to State a Claim for
            Injunctive Relief under the ADA against Graziani
24
         Plaintiff fails to state a claim under the ADA.  Plaintiff
25
   alleges that
26
         I was subjected to some discrimination . . . and
27       harassment, as a result of my having the debilitating and

28
                                  30

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> disabling condition of arthritis.  I was given a hard
> time because I chose to utilize my employee 90 "free"
> days leave to rest and somewhat recuperate from the
> problems I have from arthritis . . .

FAC at 4:15-18.

Plaintiff's ADA claims fail to allege either that 1) NSH employees knew of Plaintiff's arthritic condition, or 2) any of the specific adverse actions allegedly taken by NSH employees against Plaintiff was performed to discriminate against her because of her disability.  Plaintiff's allegation that she was "given a hard time" because of her use of sick leave does not support a disability discrimination claim unless adverse action directed towards Plaintiff was motivated by her disability.  If Plaintiff can amend her complaint to assert truthfully facts from which it could be inferred that NSH employees 1) knew of Plaintiff's arthritis and 2) took adverse actions against Plaintiff because of this knowledge, she may state a claim for injunctive relief against Graziani.

    E.   Summary of ADA Claims

In summary, all ADA claims except the claim for injunctive relief against Graziani in his official capacity based on discrimination against Plaintiff are dismissed without leave to amend.  The official capacity claim against Graziani for injunctive relief based on discrimination is dismissed with leave to amend.

IV.  Rehabilitation Act Claims

The Rehabilitation Act is substantially identical to the ADA, except that it is limited to programs that receive federal financial assistance, Armstrong v. Davis, 275 F.3d 849, 862 n.17

31

United States District Court

For the Northern District of California

(9th Cir. 2001), and requires a plaintiff to prove discrimination "solely by reason of his or her disability."  29 U.S.C. § 794(a). The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the ADA.  Coons, 383 F.3d at 884 (citing 29 U.S.C. § 794(d)).

A. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's claims under the Rehabilitation Act must be dismissed because she failed to exhaust administrative remedies.  However, exhaustion of administrative remedies is not required for Rehabilitation Act claims.  Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990).  Therefore, Defendants' argument for dismissal on this ground fails.

B. Claims Against Individual Defendants

Individual Defendants move to dismiss Plaintiff's discrimination and retaliation claims under the Rehabilitation Act on the ground that they are not proper defendants.

1. Discrimination Claims

Section 504 of the Rehabilitation Act of 1972 prohibits discrimination against employees on the basis of disability by any "program or activity" which receives federal funding.  29 U.S.C. § 794(a).  Because Individual Defendants are not a "program or activity" as defined in section 794(a) they cannot be sued in their individual capacities for discrimination under this section.

2. Retaliation Claims

The Ninth Circuit has not yet ruled on whether individuals may be held liable for retaliation claims under the ADA or the Rehabilitation Act.  Several courts, addressing retaliation claims

32

United States District Court

For the Northern District of California

in employment under the ADA, have decided that individuals may not

be held liable.  See e.g., Baird v. Rose, 192 F.3d 462, 471-72 (4th

Cir. 1999); Hiler v. Brown, 177 F.3d 542, 545-46 (6th Cir. 1999);

Van Hulle v. Pacific Telesis Corp., 124 F. Supp. 2d 642, 646 (N.D.

Cal. 2000) Stern v. California State Archives, 982 F. Supp. 690,

692-93 (E.D. Cal. 1997).  To this Court's knowledge, only one court

has held the opposite.  See Ostrach v. Regents of the Univ. of

Cal., 957 F. Supp. 196, 200 (E.D. Cal. 1997).  The Court could find

no rulings addressing retaliation in employment under the

Rehabilitation Act.  However, without deciding whether individuals

can be liable for retaliation, the Court finds that Plaintiff has

failed to state a claim of retaliation under the Rehabilitation

Act.[8]

As noted above, a claim of retaliation requires a plaintiff to

show a causal link between involvement in a "protected activity"

and an adverse employment action.  Coons, 383 F.3d at 887.  A

causal link requires a showing that the defendant knew of the

protected activity, or that the temporal proximity between the

protected activity and the adverse action was "very close."  Clark

County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (per

curiam).  Protesting the actions of supervisors for their alleged

violation of a discrimination law is a protected activity, as is

making such informal complaints to a supervisor.  Trent v. Valley

Electric Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994); Ray v.

_____

[8]The Court did not address the merits of Plaintiff's
retaliation claim under the ADA because it was dismissed for
failure to exhaust administrative remedies.

United States District Court

For the Northern District of California

1  Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).

2      Plaintiff fails to allege, nor can the Court infer, any

3  activity in which she engaged that was protected under the

4  Rehabilitation Act.  Plaintiff alleges that she complained about

5  the abuse of patients at NSH.  However, the abuse of patients is

6  not forbidden under the Rehabilitation Act, which prohibits only

7  disability discrimination.  Plaintiff also alleges that she was

8  "given a hard time" because of her use of sick leave.  It does not

9  appear that use of sick leave is "protected activity" under the

10  Rehabilitation Act.  Therefore, Plaintiff's Rehabilitation Act

11  retaliation claim is dismissed.  If Plaintiff can truthfully allege

12  a causal connection between her participation in an activity

13  protected by the Rehabilitation Act and an adverse employment

14  action, she may include this claim against specific Individual

15  Defendants in her second amended complaint.

16      C.  Discrimination and Retaliation Claims against NSH

17      Under the Rehabilitation Act, sovereign immunity is not

18  implicated because the State of California has unambiguously waived

19  its Eleventh Amendment immunity by receiving Rehabilitation Act

20  funds.  Douglas, 271 F.3d at 820; see also Phiffer v. Columbia

21  River Corr. Inst., 384 F.3d 791, 793 (9th Cir. 2004) (affirming

22  continued validity of Douglas holding).  Therefore, Plaintiff may

23  assert Rehabilitation Act claims for injunctive relief and for

24  damages against NSH based on discrimination and retaliation.

25  Plaintiff's ability to sue NSH directly renders unnecessary claims

26  against Individual Defendants in their official capacity.  Soffer

27  v. City of Costa Mesa, 798 F.2d 361, 363 (9th Cir. 1986).  The

28

34

United States District Court

For the Northern District of California

Rehabilitation Act claims against the Individual Defendants in their official capacities are dismissed without leave to amend, but Plaintiff may bring a Rehabilitation Act claim for injunctive relief and damages against NSH in her second amended complaint.

Although, under the Rehabilitation Act, Plaintiff may sue NSH, the allegations in the FAC are insufficient to state a claim against it.  The standards for liability under the ADA and Rehabilitation Act are the same.  <u>Armstrong</u>, 275 F.3d at 862 n.17. Therefore, for the reasons discussed above in regard to the ADA claims, Plaintiff must amend her complaint to state a claim under the Rehabilitation Act.  Plaintiff's Rehabilitation Act claim based on discrimination and retaliation is dismissed with leave to amend.

D.   Summary of Rehabilitation Act Claims

All Rehabilitation Act discrimination claims against Individual Defendants are dismissed without leave to amend.  The Rehabilitation Act damages claims for retaliation against Individual Defendants are dismissed with leave to amend to state a claim.  The Rehabilitation Act discrimination and retaliation claims against NSH for damages and for injunctive relief are dismissed with leave to amend to state a claim.

V.   Plaintiff's Motion to Appeal Denial of Discovery

On August 1, 2005, Plaintiff submitted an appeal of Magistrate Judge Laporte's order, entered July 7, 2005, denying Plaintiff's motion for reconsideration and denying without prejudice Plaintiff's motion to compel.  Under Rule 72(a) of the Federal Rules of Civil Procedure, a party must file objections to a magistrate judge's order on a non-dispositive motion within ten

United States District Court

For the Northern District of California

days of the order.  Because Plaintiff has failed to meet this
deadline, Plaintiff's request to appeal the denial of discovery is
denied.

                          CONCLUSION

     For the reasons stated above, Defendants' motion to dismiss
(Docket No. 63) is GRANTED.  Plaintiff's request for leave to amend
is GRANTED in part.  The following claims are dismissed without
leave to amend: 1) all section 1983 claims against Individual
Defendants in their official capacities except the claim for
injunctive relief against Graziani, 2) any section 1983 claim
against NSH, 3) all ADA claims against Individual Defendants in
their individual capacities, 4) all ADA claims against Individual
Defendants in their official capacities except the claim for
injunctive relief against Graziani for discrimination, 5) any ADA
claim against NSH, 6) all Rehabilitation Act claims for
discrimination against Individual Defendants in their individual
capacities, and 7) all Rehabilitation Act claims against Individual
Defendants in their official capacities.  The following claims are
dismissed with leave to amend in accordance with this order: 1) the
section 1983 damages claims against Individual Defendants in their
individual capacities, 2) the section 1983 claims against Graziani
for injunctive relief, 3) the ADA discrimination claim against
Graziani in his official capacity for injunctive relief, 4) the
Rehabilitation Act discrimination claim against NSH for damages and
injunctive relief, and 5) the  Rehabilitation Act retaliation
claims against Individual Defendants and NSH for damages.  Because
leave to amend has been granted, Plaintiff's request for stay

1   (Docket No. 82) is DENIED as moot.  If Plaintiff chooses to file a

2   Second Amended Complaint (SAC) remedying the deficiencies noted in

3   this Order, she must do so within two weeks from the date of this

4   Order.  Defendants' response will be due twenty days thereafter.

5   The case management conference that has been set for March 10, 2006

6   at 10:00 a.m. is VACATED.  If Defendants file a motion to dismiss

7   the SAC, they shall notice it for April 28, 2006 at 10:00 a.m.  A

8   case management conference will be held on the same date.  If

9   Plaintiff fails to file a timely SAC, the case will be dismissed

10  with prejudice for failure to prosecute.

11       IT IS SO ORDERED.

12  Dated:   2/15/06

13  _____
    CLAUDIA WILKEN
14  United States District Judge

15

16  Copies mailed to counsel
    as noted on the following page

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California